Colin R. Hagan (CA Bar #298591)
Colin.Hagan@slglawfirm.com
Shlansky Law Group, LLP
3790 El Camino Real, #112
Palo Alto, CA 94306
Phone: (650) 238-5433
Fax: (866) 257-9520
*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

———————————————————    )
    )
AVID HOLDINGS LTD. f/k/a ALDEREGO    )
GROUP LTD., a Hong Kong limited liability    )  Case No. 2:24-cv-8196
company, HANNA CARFIELD, and    )
JONATHAN CARFIELD,    )  **COMPLAINT**
    )
        Plaintiffs,    )
    )  **JURY TRIAL DEMANDED**
    - against -    )
    )
ALEX KWON, ZHAO YU, DENTONS    )
DURHAM JONES PINEGAR P.C., DENTONS    )
US LLP, and BEIJING DACHENG LAW    )
OFFICES, LLP,    )
    )
        Defendants.    )
———————————————————    )

## INTRODUCTORY FACTUAL BACKGROUND

Plaintiffs Avid Holdings Ltd., formerly known as AlderEgo Group Ltd. ("Avid

Holdings") and Hanna Carfield and Jonathan Carfield (wife and husband) bring this Complaint

against Alex Kwon; Zhao Yu; Dentons Durham Jones Pinegar P.C. ("Dentons Durham");

Dentons US LLP ("Dentons US"); and Beijing Dacheng Law Offices, LLP ("Dentons China").[1]

---

[1] This Complaint refers to the three Dentons entities collectively as "Dentons." Dentons holds itself out as a "global legal practice" with numerous "member firms and affiliates" comprising its operations in Shanghai, Salt Lake City, and Los Angeles that are individually and collectively referred to as Dentons and are all part of a common enterprise. To the extent that the allegations refer to "Dentons" this is: (a) a function of how Dentons' "member firms and affiliates" refer to themselves individually and collectively as Dentons; (b) because each of the Dentons entities

For their Complaint, upon personal knowledge with respect to themselves and their own acts, and upon information and belief as to all other matters, and with the belief that all matters alleged herein will have evidentiary support after a reasonable opportunity for further investigation and discovery, Plaintiffs state as follows:

1.      This is a case about a very successful brand for consumer electronic products – vaporizer ("vape") devices – that a licensee and distributor liked so much that it sought to usurp the whole enterprise, with its principals falsely holding themselves out as founders.  In doing so, they coopted one of the licensor's key agents and took confidential information, opportunities, and even personal documents, including marital and attorney-client privileged communications. They undertook extensive efforts to emulate and take over their licensor, essentially disabling the licensor by imposter tactics.

2.      Next Level Ventures, LLC ("Next Level"), a company founded and largely owned by Alex Kwon, was the exclusive distributor of certain of Avid Holdings' market-leading products and had a limited license to use Avid Holdings' brand, known as Advanced Vapor Devices or "AVD," in connection with selling Avid Holdings' products.

3.      Kwon, Next Level's Chief Executive Officer (who has held himself out as Chief Executive Officer and Founder of "AVD"), and Michael Brosgart, who is Next Level's Chief Operating Officer, were indignant that Avid Holdings would not recognize them as founders of its enterprise or brand.[2]

---

included herein participated in the act described; or (c) because it is unknown to Plaintiffs exactly which of the Dentons entities undertook a particular act (and each individual entity's conduct is attributable to the common enterprise).  The claims pleaded herein against Dentons are also not subject to Cal. Civ. Code § 1714.10.  To the extent Cal. Civ. Code § 1714.10 applies, the claims pleaded against Dentons herein are subject to the exception set forth in Cal. Civ. Code § 1714.10(c).

[2] Avid Holdings and the Carfields do not bring any claims against Brosgart at this time, based on the limited information presently known about his involvement in the misconduct.  However, they reserve the right to amend to bring claims against Brosgart, individually, should the results of the Plaintiffs' ongoing investigation yield additional evidence to support bringing claims against him, individually.

COMPLAINT

4.      They set out surreptitiously in the summer of 2021 to take over the enterprise and brand and exclude Avid Holdings, its founder Jonathan Carfield, and his spouse Hanna Carfield, from the marketplace.  To do this, they used Next Level's position as the exclusive distributor of some of Avid Holdings' products to starve Avid Holdings of revenue necessary to fund manufacturing.  At the same time, they intentionally increased orders that they knew Avid Holdings could not fulfill without the revenue that Next Level was withholding.  Next Level and its principals used this deliberate squeeze to claim a breach of the parties' Exclusive Distribution Agreement and initiated an arbitration against Avid Holdings.

5.      In September and October of 2021, Avid Holdings was confronted with a multi-front assault.  Its cash position was stymied by Next Level's sudden refusal to make even small payments.  Next Level had run up a bill of over $11 million while claiming, with no basis, that Avid Holdings needed to extend it ever more credit in the form of free inventory advances.

6.      Meanwhile, through surreptitious interference, conspiracy, and other misconduct, Kwon and Brosgart had also turned Avid Holdings' key administrative agent, Zhao Yu ("Zhao" who is also known as "Frank"), who was also its bank signatory, to become disloyal.  It coordinated with him to violate the private and confidential business information and files of Avid Holdings and the Carfields' enterprise; to take Avid Holdings' money, and its information and opportunities; and to undertake a pattern of deception, misrepresentation to several tribunals, and wholesale unfair competition, trademark misuse, and outright misappropriation of the business.  They turned him into a double-agent who, at least as early as 2021 and certainly during 2022, began to surveil and misappropriate confidential information from the Carfields and the operations for which he was serving as the Carfields' agent.  At Next Level's behest, he later took data, documents, and *de facto* control of Avid Holdings.

7.      Kwon and Brosgart directly participated in inducing Zhao to facilitate a direct

COMPLAINT

relationship between Next Level and Avid Holdings' manufacturer, cutting out his employer. This included improper plans and actions to withhold Avid Holdings' own funds, to falsely claim to be the owner of Avid Holdings, and to claim that its true owner, Mr. Carfield, had no authority with his wholly-owned company, Avid Holdings.

8.     Kwon, Brosgart, and, after they coopted him, Zhao, enabled Next Level to circumvent Avid Holdings by striking a deal with Avid Holdings' Chinese factory.  In doing so, they distressed the relationship between Avid Holdings and the factory by refusing payments, then caused the factory to bypass Avid Holdings and accept a discount for the payables that they had prevented Avid Holdings from paying.  They then inserted themselves in direct dealing, bypassing Avid Holdings, and negotiated a large discount for payment of what they had withheld, and pocketed Avid Holdings' profit of several million dollars.  They also disabled Avid Holdings by preventing it from defending itself in an arbitration that Next Level brought, knowing that Avid Holdings would be disabled without its payment processor, bank accounts in China, funds, and even access to its mail, which Zhao was receiving as its agent.  For good measure, Zhao took the funds that were in the accounts.

9.     Next Level's outside counsel coordinated the scheme and were actively involved. Through actions taken by its Shanghai and Salt Lake City staff, Dentons coordinated the overall plan, wrote English directives for Zhao to claim falsely to own Avid Holdings and instruct Avid Holdings' own counsel not to represent Avid Holdings.[3]  This, along with being starved of revenue, obstructed Avid Holding's representation in the arbitration that Next Level had initiated. Zhao, acting as a double-agent, also intercepted or diverted notices from the arbitration, which further prevented Avid Holdings from defending the arbitration.

---

[3] Upon information and belief, the Shanghai Dentons staff would be employees of Dentons China and the Salt Lake City, Utah, staff would be employees of Dentons Durham, though they are, and acted as, a single enterprise.

COMPLAINT

10.    Next Level ultimately used these manufactured crisis to overtake the AVD business and obtain an arbitration award in favor of Next Level.  This overtaking means actually taking on relationships, designs, and assets, including money, as in a corporate takeover.  But it also means strategically disabling a counterparty to defeat it as a competitor and take market share, as in speeding past a rival.

11.    Through still-unknown *ex parte* representations to the arbitrator, Next Level achieved permission to use "self-help" indefinitely to partner directly with Avid Holdings' manufacturer and maintain exclusive use of Avid Holdings' and the Carfields' intellectual property, excluding Avid Holdings from the enterprise that it founded.

12.    Having usurped Avid Holdings' and the Carfields' enterprise and the AVD brand (even calling itself AVD and filing false trademark application for trademarks that it was the mere licensee of), Next Level and its principals then initiated a litigation against the Carfields in Delaware.  Next Level used the auspices of a subpoena as cover for Avid Holdings' employee and agent, Zhao, now Next Level's and its principals' double-agent, to produce to Next Level a laptop belonging to Mr. Carfield.  Kwon coordinated for Zhao to travel from China and be in Los Angeles on a particular date to receive a subpoena and facilitate Next Level's counsel's unauthorized access to Avid Holdings' and Mr. Carfield's confidential information using Mr. Carfield's stolen passwords.

13.    Logs of Mr. Carfield's password-protected Google Drive account reflect that on September 19, 2022, a device sync was recorded from an IP address assigned to the Dentons law firm.  Logs from Mr. Carfield's Google account also reflect that on September 21, 2022, an unauthorized user used the Google Vault tool to export data from Mr. Carfield's Google Drive and Mail accounts.  Google Vault is a common e-discovery tool, suggesting that it was counsel's office who performed this additional data breach.

COMPLAINT

14.    Dentons accessed Avid Holdings' and Mr. Carfield's password-protected networks and accounts, including e-mail.  On behalf of Next Level, it used the proceeds of this subpoena to create a misleading narrative that the Carfields were somehow subject to Delaware law as managers of a nonfunctioning Delaware company and therefore subject to jurisdiction in Delaware.  What they took had, on information and belief, already been accessed by Zhao, Kwon, and Brosgart for months by prior, unlawful breaches of the security on Mr. Carfield's laptop, which Zhao had seized months before – supposedly "lost" when Mr. Carfield was at a factory with Zhao there as his employee.

15.    Although zealous legal representation is not improper, Kwon and Dentons (through each of Dentons Durham, Dentons US, and Dentons China), were directly involved in actionable misconduct.  This includes co-opting an agent of Avid Holdings who himself became a client of Dentons.  It includes conducting his actions to use his position within the Carfields' enterprise to monitor the Carfields and their enterprise for Next Level.  It includes invading protected electronic networks and taking of property in an effort to eliminate Avid Holdings and exclude the Carfields from the enterprise that they founded.  This conduct, purportedly on the premise that Zhao was the owner of the whole enterprise – a bold fiction – exceeds protection of interests through legal activity and comprises actively tortious acts.

16.    Next Level has recently revealed that it has taken Avid Holdings' licensed brands and goodwill and converted them into its new brand, "ACTIVE."  After spending millions of dollars on multi-front litigation against Avid Holdings and the Carfields to try to brand its whole enterprise as the product-specific trademarks that it licensed, and having that effort stumble, Kwon, Brosgart, and Next Level changed tack and sought to extinguish the licensed brands and divert all goodwill to this newly-coined brand, "ACTIVE."

17.    This effort to supplant the Carfields as the developers and owners of a well-known

brand by outright taking the brand and then extinguishing it, and as the owner of a competitive venture, by falsely claiming ownership of the Carfields' enterprise and brands and leading them to ruin, gives rise to several statutory claims and related common-law claims, including for: tortious interference; violations of the Lanham Act; violations of the Computer Fraud and Abuse Act, the Electronic Communications Privacy Act, and the California Comprehensive Computer Data Access and Fraud Act, along with related common-law causes of action; defamation; and civil conspiracy.

18.     Certain of the facts described herein concerning the events that led to and were decided in the prior arbitration that Next Level brought against Avid Holdings may be subject to claim preclusion or issue preclusion as to Next Level.[4]  However, those facts are included here insofar as necessary to provide context and plausibly allege the separate claims pleaded in this Complaint.

19.     Avid Holdings and the Carfields are pursuing related claims against Next Level in an arbitration pending before the International Centre for Dispute Resolution of the American Arbitration Association (ICDR-AAA Case No. 01-23-0000-8019), pursuant to the Exclusive Distribution Agreement between Next Level and Avid Holdings.  That Agreement binds Avid Holdings' affiliates to exclusive arbitration, but not Next Level's, hence the Defendants here may not be addressed in that arbitration by the Plaintiffs here.[5]

20.     Avid Holdings and the Carfields bring these claims against Kwon, Zhao, and Dentons for their own misconduct.  The claims are brought in this forum because these

---

[4] As of the date of this filing, the order and judgment affirming the prior arbitration that Next Level brought against Avid Holdings is on appeal.  *See Next Level Ventures, LLC v. Avid Holdings, Ltd.,* Appeal Case No. 23-35404 (9th Cir. 2023).

[5] An affiliate of the Carfields has a patent infringement claim against Next Level.  It sought to bring that claim in the above-referenced arbitration, but the Arbitrator recently held that the claim was not within the scope of the arbitration provision.  That affiliate intends to bring its patent infringement claim against Next Level as part of a separate federal court proceeding.

Defendants are not bound by any arbitration agreement.

**PARTIES AND JURISDICTION**

21.     Plaintiff Avid Holdings is a Hong Kong limited liability company with its historic principal place of business in Wan Chai, Hong Kong, now relocated to Shenzhen, China.  Avid Holdings was incorporated in Hong Kong on April 25, 2018, using the name "AlderEgo Group Limited" and subsequently changed its name to "Avid Holdings Limited" on July 29, 2021.

22.     Hanna Carfield is an individual domiciled in South Korea.

23.     Jonathan Carfield is an individual domiciled in Bangkok, Thailand.

24.     Alex Kwon is an individual domiciled in Washington State.

25.     Zhao Yu is an individual who, upon information and belief, resides in Shenzhen, China.

26.     Dentons Durham Jones Pinegar P.C. is a law firm, organized as a Utah professional corporation with its principal place of business in Salt Lake City, Utah.  It is part of a "global legal practice" with numerous "member firms and affiliates" comprising its operations in Shanghai, Salt Lake City, and Los Angeles that are individually and collectively referred to as Dentons.  These "member firms and affiliates" are all part of a common enterprise.

27.     Dentons U.S. LLP is a law firm with an office in Los Angeles, California. Dentons U.S. LLP is part of the Dentons "global legal practice."  Upon information and belief, the Dentons-affiliated office in Los Angeles is an office of the legal entity Dentons U.S. LLP, which is an affiliate of Dentons.

28.     Beijing Dacheng Law Offices, LLP, is an affiliate of Dentons and part of Dentons' "global legal practice" operating in Shanghai, China, and with offices elsewhere in China. Dentons China identifies itself as "Dentons" on its public website, but claims that it is "Dentons' Preferred Law Firm in China."  Attorneys at Dentons China refer to themselves as attorneys of

the "Dentons Law Firm." The attorneys in Shanghai that have acted as recounted herein have done so under the style "Dentons."

29.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this Complaint pleads claims arising under federal law.

30.    This court has supplemental jurisdiction of all the State law claims under 28 U.S.C. § 1367(a). The federal and state law claims all make up the same case or controversy under Article III of the United States Constitution.

31.    This Court is the proper forum and this action is properly filed in the County of Los Angeles and in this judicial district because many of the acts and omissions giving rise to the causes of action stated herein occurred or arose in the County of Los Angeles.

## **FURTHER FACTUAL ALLEGATIONS**

*The Carfields Found a Successful Enterprise and Develop Valuable Intellectual Property*

32.    Between approximately 2014 and until 2017, the Carfields operated a lawful and licensed cannabis businesses in Washington. Through this experience, they recognized an opportunity to compete in the market for vaping products with innovative designs and cost-effective manufacturing.

33.    In March 2018, they moved to Shenzhen, China, with the goal of developing vape devices and cartridges to compete with another brand known as "Smoore's CCell."

34.    In April 2018, Mr. Carfield made connections with Jin Cheng (referred to as "Director Cheng"), who owned a factory in China, initially called ARC, then called Shenzhen Vaplax Electronic Technology Co. Ltd ("Vaplax") and now called Shenzhen Naixin Technology Co. Ltd. ("Naixin").[6]

---

[6] According to public records, Naixin was formed on June 17, 2015. On June 18, 2021, Zhao became the legal

COMPLAINT

35.    On April 22, 2018, Mr. Carfield obtained the domain "avd710.com." This domain is valuable for sales because "710" is a popular industry trope referring to "OIL" spelled upside down and backward with numbers. The active substance in cannabis is concentrated in oil that is extracted from the native vegetable matter, and the vaping devices heat the oil into a vapor that consumers inhale, hence the cachet of a trusted brand, AVD, conjoined with "710."

36.    Mr. Carfield formed AlderEgo Group, Ltd., on April 25, 2018. AlderEgo later changed its name to Avid Holdings.

37.    In May 2018, Avid Holdings began selling "AVD" branded vape cartridges in the United States. Director Cheng's factory ARC initially manufactured Avid Holdings' vape products.

38.    The Carfields set up the factory manufacturing "AVD" or "Advanced Vapor Devices" to work exclusively for Avid Holdings manufacturing vaping products. With the growing legalization of cannabis usage in much of the United States and Canada, "vape" products have become a commonly-used electronic device, and sales have grown parabolically in recent years. Sales of vaping equipment under a single, well-known brand can reach $100 million or more annually in the United States alone.

39.    Mrs. Carfield filed a trademark application for AVD on July 24, 2018.

40.    Mr. Carfield met Kwon in or around October 2018.

41.    Kwon is the Chief Executive Officer and one of the owners of Next Level, which he formed on November 2, 2018.

42.    Once Mr. and Mrs. Carfield began setting up their business in China and Hong Kong, they learned that it would be difficult for them to set up a bank account in Hong Kong as United States citizens.

_____

representative for Naixin, and as of the most current information holds 80% of Naixin.

COMPLAINT

43.     They were advised that it would be easier to find a dormant corporate shell in China with an existing bank account, and use that entity for collecting and distributing money.

44.     The Carfields knew Zhao.  When they operated their prior company in Washington, Zhao was their packaging supplier in China.  They stayed in touch with him in China and, in passing, mentioned to him their need for a banking solution.

45.     He responded that he happened to have such a dormant company, then-known as Zijing Medical Health (HK) Co., Ltd.

46.     Zhao agreed to operate as the Carfields' agent, including serving through Zijing Medical Health (HK) Co., Ltd. (n/k/a AVD Holdings) as the local payment processor for Avid Holdings, as its Chinese national employee, with residency that was necessary to function with local bank accounts and deal with factories in Shenzhen, China.  Zhao was an agent and employee of the Carfields' enterprise, primarily serving to facilitate payment processing and other administrative functions related to Avid Holdings' Distribution Agreement with Next Level. Zhao was employed as a ministerial functionary of the Carfields and Avid Holdings, reporting to their accountants and receiving a modest salary.

47.     Zhao performed in-country administrative and operational functions for the Carfields' enterprise within China, including employing the team of Chinese employees that provided graphic design and website work, fulfilling orders, working on business and product development, and consulting with the factory to manufacture the AVD-branded products.  Zhao was the Carfields' and Avid Holdings' employee, whom they paid in Hong Kong through their local finance professionals.

48.     At the direction of Mr. Carfield, Zijing Medical changed its name in 2019 to AEG Holding, Ltd., with "AEG" correlating to the Carfields' then-current company, AlderEgo Group. AEG Holdings later changed its name in 2020, again at Mr. Carfield's direction (which was

communicated to Zhao by Mrs. Carfield), to AVD Holdings, Ltd. ("AVD Holdings"), to reflect the robust "AVD" trademark that was succeeding.

49.    Zhao gave essential control of his local processing company AVD Holdings to Mr. Carfield to use as an instrumentality as part of Zhao's employment and agency.  In exchange, Zhao was promised a 5% interest in a local operating company, subsuming the Chinese ministerial operations, conducted through AVD Holdings, and also in the worldwide overarching operation, in the separate, top-level entity Avid Holdings.  The stock issuance was planned to be completed later.  Zhao received a modest salary for his services.

50.    Mr. Carfield and Zhao agreed orally to have Mr. Carfield have power of attorney and control of the local banking entity AVD Holdings (formerly Zijing Medical) by a cooperation agreement and written power of attorney, which they had drafted by a Chinese lawyer.  Though Zhao would remain the registered owner in the public record, he was agreed to be a minority owner of the overall enterprise in exchange for the ministerial, but important, local banking and administrative functions within China.  Zhao performed these services as an employee but also using his local entity, renamed with "AVD" to be part of the overall, international enterprise in which the parties agreed that he would be a minority owner.

51.    Zhao processed incoming and outgoing payments, provided some translation services, and provided a variety of administrative services for the Carfields' enterprise, including factory liaison assistance.  Zhao sought direction and permission from the Carfields, and their Hong Kong accountants.  Zhao was not authorized to spend money and take actions without permission, and was vetted as to each credit card expenditure and each transaction.

52.    Zhao worked under Mr. Carfield's direction as an agent or payment processor for Avid Holdings (the parent) and also for AVD Holdings (the subsidiary).  This included sending and receiving e-mail as an agent of Avid Holdings, and communicating in Mandarin and

Cantonese with local staff and the factories.  Extensive e-mails show Zhao working in a subordinate capacity, taking instruction from and reporting to the Carfields and their Hong Kong accountants, who also provided administrative oversight.  Upon information and belief, Zhao or Dentons (either through Dentons Durham, Dentons US, or Dentons China) later deleted many e-mails showing Zhao's agency and employment, including AVD Holdings' e-mails from the Carfields' and Avid Holdings' cloud networks.  These documents were later partially retrieved by other means.

*The Distribution Agreement*

53.     On January 1, 2019, AlderEgo Group (now known as Avid Holdings) and Next Level entered into an initial distribution agreement.

54.     AlderEgo Group entered into the initial distribution agreement with Next Level based on Next Level's commitments to regular minimum cash purchases to allow the scaling and reduced pricing by Avid Holdings' operations, which included funding the tooling, developing, and economies-of-scale pricing from the factory, Vaplax (later known as Naixin).

55.     On April 16, 2019, Mrs. Carfield received approval from the United States Patent and Trademark Office for the "AVD" logo that she developed that Next Level and Avid Holdings had been using (and Next Level was also using, pursuant to the terms of the Distribution Agreement).

56.     On April 20, 2020, the parties entered into an Amended and Restated Exclusive Distribution Agreement (the "Distribution Agreement").  *See* Exhibit A.

57.     The Goods were manufactured by Vaplax.  The Distribution Agreement directed payment to Avid Holdings' payment processor Zijing Medical Health (HK) Co. Limited (now known as AVD Holdings (HK)), per Avid Holdings' arrangement with Zhao.  *Id.* § 3.3.

58.     The Distribution Agreement made Next Level the exclusive distributor for

-13-

specifically-enumerated "AVD" and "Advanced Vapor Devices" branded products belonging to Avid Holdings.

59.     The Distribution Agreement granted Next Level a limited license to certain intellectual property in connection with marketing specified Avid Holdings products, defined as Goods.  *Id.* § 1.1 ("Seller hereby appoints Distributor as its exclusive distributor and manufacturer representative <u>of the products set forth on Schedule 1</u> (as described in further detail on Schedule 1 as may be modified from time to time, collectively, the 'Goods') . . . .") (emphasis added).[7]  The license provides:

> <u>Seller's Trademark License Grant.</u>   Subject to the terms and conditions of this Agreement, Seller hereby grants to Distributor a sublicensable, exclusive, non-transferable license in the Territory during the Term solely on or in connection with the promotion, advertising, and resale of the Goods in accordance with the terms and conditions of this Agreement to use all Seller's trademarks for the Goods (including "AVD" and "Advanced Vapor Devices" and the trademarks set forth on Schedule I), whether registered or unregistered, including the listed registrations and applications and any registrations, which may be granted pursuant to such applications. On expiration or earlier termination of this Agreement, Distributor shall promptly discontinue the display or use of any trademark or change the manner in which it is displayed or used with regard to the Goods.  Upon expiration or earlier termination of this Agreement, Distributor's rights under this Section 6 shall cease immediately.  Other than the express licenses granted by this Section 6, Seller grants no right or license to Distributor, by implication, estoppels, or otherwise, to the Goods or any intellectual property rights of Seller or its affiliates.  Seller shall not use any of the trademarks licensed to Distributor under this Agreement in any promotional, advertising or marketing materials or content, or other public-facing content, in the Territory without the prior written consent of Distributor.

*Id.* § 6.

60.     Section 6 makes clear that it pertains only to the expressly-enumerated trademarks and grants no license by implication.  *Id.* ("Other than the express licenses granted by this Section 6, Seller grants no right or license to Distributor, by implication, estoppels, or otherwise, to the Goods or any intellectual property rights of Seller or its affiliates.").

---

[7] The Distribution Agreement's text identifies "Schedule 1," whereas the attached, signed document is "Schedule I."

COMPLAINT

1

2

3

*Kwon and Zhao Squeeze Avid Holdings to Usurp the Carfields' Enterprise*

4   61. Kwon had previously been engaged in the business of illegally growing and selling

5 cannabis when it was criminally prohibited in various states.  He was apparently jealous of the

6 enterprise that the Carfields had built.  Kwon grew resentful that the Carfields would not

7 recognize him as a founder of the Carfields' enterprise.  Motivated by personal animus and

8

9 animosity, Kwon launched a broad effort to usurp his and Next Level's proper role, take others'

10 property and value, and harm those whom he perceived as rivals.  This fit with apparent plans

11 from the outset to try to use a distributor relationship as a Trojan Horse to invade and overtake a

12 business enterprise that the Carfields had created.

13   62. After Avid Holdings and Next Level started working together, Next Level failed to

14 meet the quarterly minima, beginning in 2019.  Those minima were necessary and allowed

15 interdependent commitments to third parties by Avid Holdings, such that the breach of them

16

17 constituted a fundamental breach running to the core of the Distribution Agreement.  The factory

18 required certain minimum orders in order to remain available to manufacture products for Avid

19 Holdings.  There was no provision for Next Level to carry a debt balance.  It occasionally did so

20 and later claimed that Avid Holdings had agreed to let it do so, but there was never any written

21 modification of the agreement, nor was there any agreement to extend credit, let alone many

22 millions of dollars.

23

24   63. Next Level was consistently deficient in meeting its Minimum Distribution

25 Targets pursuant to Section 3.1 of the Distribution Agreement, and consistently failed to make

26 minimum payments discussed between Avid Holdings and Next Level to maintain sufficient

27 revenue for the factory.

28   64. Beginning in 2020, and during 2021, Avid Holdings repeatedly informed Next

COMPLAINT

Level that it needed to pay down its debt.  Avid Holdings was trying to be flexible and to find a friendly solution, but it also had to make sure that it always had enough money to pay the factory and its own staff for monthly operating overhead.

65.    For example, on November 17, 2020, Mrs. Carfield provided Next Level with a *minimum* wire schedule for December 2020 through April 2021, premised on static sales rates.

66.    From November 2020 through September 2021, Next Level continued to make payments, but it consistently failed to meet the minima outlined by Mrs. Carfield, causing Next Level's debt to increase from $800,000 to $11 million.  By late 2020, the underlying carryover for each month was a growing number of millions, and in 2021 it generally accelerated as Next Level tried to keep ordering more than it paid.

67.    Throughout this time, Next Level was only paying enough to keep the factory lights on at current production levels, not even addressing newly-accruing shortfalls due to ramping orders.

68.    In August 2021, Next Level paid $825,000 per week, and in September 2021, Avid Holdings required $950,000 per week, and a cap on ordering quantities, due to the prior ramp-up in product output and capacity.  Next Level then altogether refused to pay.

69.    According to public records, Zhao, the Carfields' and Avid Holdings' agent, had already acquired control of the Naixin factory by August 2021.  Despite being the Carfields' and Avid Holdings' employee, Zhao was secretly making plans with Next Level, Brosgart, and Kwon, just as Next Level and Kwon (and on information and belief, Brosgart) were creating a cash-flow distress.

70.    On information and belief, Zhao was doing this as part of a planned pincers movement coordinated with Kwon, Brosgart, Next Level, and Dentons.  The Carfields and Avid Holdings much later learned that Kwon, Brosgart, Next Level, and Dentons were discussing and

-16-

negotiating a partnership during Next Level's 2021 refusal to pay Avid Holdings and the Carfields through their local Chinese payee, AVD Holdings.

71.    Next Level's consistent failure to pay down its debt threatened Avid Holdings' retention of the factory's capability.  Meanwhile, having distressed the factories, Zhao was buying the factory itself, on information and belief with coordination with Kwon, Brosgart, Next Level, and Dentons.

72.    During the summer of 2021, Avid Holdings tried to accommodate Next Level's refusal to meet the payment requirements with a temporary, alternative minimum payment schedule.  Avid Holdings continued to fulfill orders at then-current production levels so that it could maintain its minimum payment to the factory.  Next Level continued to demand product without paying even at the rate of increase, growing the sum of millions of dollars that was in arrears.

73.    During Next Level's failure to pay in late summer 2021, Next Level proposed a merger or other strategic transaction on terms unduly favorable to Next Level, which Avid Holdings refused.

74.    In connection with this merger discussion, Avid Holdings received financial information from Next Level that it had had upwards of $3 million in cash on hand that could have been used to pay down its debt, while it was demanding that Avid Holdings increase the debt.  Between October 2020 to February 2021, Kwon was making distributions to himself at an annual rate of approximately $2 million.  Next Level, despite having millions of dollars in free cash, refused to pay Avid Holdings timely.

75.    In July 2021, Kwon and Brosgart met with Mr. Carfield and others by Zoom to discuss the path forward between Next Level and Avid Holdings.

76.    At that time, the Carfields reiterated to Next Level that it (and its affiliates Kwon

and Brosgart) did not own "AVD," they licensed AVD, and their enterprise (Next Level) was not AVD. That displeased Kwon and Brosgart. Eventually the merger discussions broke down, in part, because Kwon and Brosgart insisted that Next Level in fact *was* "AVD" and that they were its founders, which was untrue and untenable.

77.    During those discussions, Next Level paid for new orders in small increments that were less than its demands for new product. It then stopped payment altogether.

78.    In August 2021, the debt issue came to a head. Avid Holdings told Next Level that its uncontrolled debt was unacceptable and proposed a payment schedule for Next Level to clear the debt in full. Avid Holding nevertheless shipped out all pending orders to Next Level, increasing the unsecured, unilateral credit facility that Next Level took. Meanwhile, Next Level sought to increase its orders but refused to pay more or pay down its debt.

79.    Next Level's deliberate refusal to pay money during those merger negotiations distressed Avid Holdings. Then, on or about August 31, 2021, Avid Holdings sent Next Level correspondence as a final notice of past due invoices totaling $10,920,328.26 (before interest), which had remained (and remains) unpaid.

80.    By the end of August 2021, Avid Holdings told Next Level that continued nonpayment was not acceptable. It demanded repayment of the debt and proposed a payment schedule for Next Level to retire its debt and unilateral credit facility. Even though Next Level ignored that proposal, Avid Holdings still shipped out all then-scheduled orders.

81.    On September 2, 2021, Next Level sent Avid Holdings a Notice of Default claiming that it did not ship out orders. The Notice of Default was incorrect as Avid Holdings had shipped out all orders that were scheduled.

82.    Next Level refused to pay the over $11 million in principal and interest that it was in arrears to Avid Holdings, the local banking entity which Zhao operated for the overall

enterprise.  It had secretly coopted Zhao in order to separate that company, and its right to the receivables.  In a clever but improper stunt, Next Level had been secretly forming a partnership with Zhao, as he had been buying up the factory during 2021, and Next Level had been distressing its licensor, Avid Holdings, by refusing payments in 2021.

83.    Even though Avid Holdings shipped out all the scheduled orders, Next Level did not send its payment due on September 3, 2021.  Instead, Next Level kept insisting that it would only put the money into escrow with Next Level's own lawyer.  On information and belief, that lawyer, Scott Gordon, had been, like Dentons, orchestrating a circumvention of Avid Holdings and an attack on Avid Holdings by various improper means, including by partnering with Zhao and his internal, confidential information.

84.    Gordon's efforts, albeit arguably improper, were, on information and belief, in the zone of legal advice.  The torts alleged against Dentons herein do not relate to legal advice, but relate to direct and affirmative acts as a tortfeasor.

85.    Despite Mrs. Carfield's continued efforts to make workable arrangements with Next Level, Next Level refused to pay Avid Holdings but continued to submit purchase orders.  At this point, Avid Holdings could not afford to process orders, given that Next Level's payments were grossly overdue.

86.    During all of this time, Next Level had no intention to pay Avid Holdings.  It had engineered a dealing with Zhao to cause maximum distress by nonpayment, to have Zhao acquire a major stake in the factories, and to create a *casus belli* by pretending that Avid Holdings had breached and hence Next Level could refuse to pay anything.  The secret partnership with Zhao, the coordinated distress of nonpayment, the acquisition of the factories, the taking of access to internal communications by Zhao, including by password-protected accounts, were among many other key facts, not known until late 2022 and 2023.

87.     Kwon, Next Level, and Zhao used these circumstances, including the extreme financial hardship that they had created, to usurp the business enterprise for Next Level and embark on an assault on Avid Holdings and the Carfields, essentially trying to destroy them. After the Carfields refused a distress merger, Kwon, along with Brosgart, Zhao, and Dentons, sought to partition and destroy the Carfields' and Avid Holdings' business and assets, to take their brands, company, documents, goodwill, and legal rights.  They also sought to take an $11 million money asset and seize it on the flimsy pretense that it belonged to an employee.

88.     The imposition of financial stress on the factories by Next Level's, Kwon's, and Zhao's coordinated refusal to pay Avid Holdings for $11 million of debt was an engineered squeeze.  This allowed Zhao to take over the factories; it allowed Kwon and Next Level to take the $11 million payable and settle it with Zhao and the factories for $7 million (pocketing the difference); it allowed Zhao and his now-owned factories to enter into a written partnership with Next Level; and it allowed all of them to take the Carfields' data and documents and pretend to own Avid Holdings and the Carfields' enterprise, to deter lawyers and prevent any defense, and to seek to destroy Avid Holdings and the Carfields through a range of torts, including trademark infringement and unfair competition.

*Zhao Obtains an Interest in the Naixin Factory and Next Level*
*Acquires the Factory's Receivables*

89.     Zhao, the factories that Zhao acquired control of, Kwon, Brosgart, and Next Level all acted with Dentons to put in place a joint venture and partnership to oust the Carfields and Avid Holdings from their own business in the fall of 2021.

90.     Plaintiffs learned in late December 2022 and 2023 about a Joint Venture and Cooperation Agreement and other related agreements with Zhao and Next Level as signatories from September 2021.  This partnership was with Next Level and Shenzhen Naisi, Zhao's new

-20-

company owning control of the factories (which factories were still held by the wholly separate Naixin). This was at the time that Next Level ousted Avid Holdings from the dealings with Next Level.

91.    A letter of intent reflects that Next Level had discussions with Shenzhen Naisi before September 16, 2021. On information and belief, the plans had been laid by those parties months before.

92.    Zhao and Shenzhen Naisi have also set up within the joint venture a fund to litigate claims against the Carfields.

93.    Unknown to the Carfields or Avid Holdings until late December 2022 and January 2023, Next Level then purported to purchase Avid Holdings' accounts receivable, acquiring the debt that was owed to the factory and taking over the place and accounts of its counterparty to the Distribution Agreement. That unpaid debt was caused by Next Level's failure to make payments to Avid Holdings (through its payment processor AVD Holdings). In effect, they supplanted Avid Holdings and the Carfields by manufacturing a crisis. The truth about these plans was concealed until the withholding of the information about them was no longer tenable because of last-minute disclosure in the Delaware lawsuit that Kwon, Brosgart, and Dentons used to try to finish off the Carfields, but which backfired by showing the secret plans in late 2022.

94.    Next Level, Kwon, Brosgart, and Zhao proceeded to usurp the AVD brand and business concept, to the exclusion of Mr. Carfield and Mrs. Carfield.

*Kwon, Brosgart, and Zhao Usurp the Carfields' AVD Brand*

95.    Next Level, Kwon, Brosgart, and Zhao have proceeded not just to use the AVD, Advanced Vapor Devices, and unique logo brands that were licensed on products. They announced to the world that they *were* AVD. They consciously and premeditatedly sought to destroy Avid Holdings, their licensor, competitor, and counterparty, and claimed to have come to

*own* the valuable licensed rights.

96.    Next Level has until recently outright called itself "AVD."  While it had the contractual right to buy and then resell specified AVD-branded products (Goods), it never had the right to *become* AVD.  It effectively usurped the identity of the valuable brand that it merely was a licensee of, including by selling many branded products that it was never allowed to.

97.    Kwon also publicly claimed to be the "Co-Founder of AVD" in numerous online posts and interviews.  He has sought to actualize this putative status by purporting to take over, for free, a brand and enterprise that he has subverted and damaged through misconduct.

98.    In April 2024, Next Level re-branded and began claiming that AVD is now ACTIVE.  In doing so, Next Level diverted the great value of the established, licensed brand, and essentially extinguishing it.  It now claims not to be using the "AVD" and other licensed brands for all, or almost all, of scores of its millions of dollars of annual sales.  It nevertheless maintains that it somehow owns the valuable trademarks that the Distribution Agreement shows it is a limited licensee of.  Effectively, as the usurpation has failed, Next Level and Kwon fell back to sacrificing the brand they could not have, turning it into a shell by diverting all goodwill to a "new" brand.

99.    To take the benefits of the refused merger, Kwon and Brosgart simply proceeded to convert Avid Holdings' assets, including by misappropriating Avid Holdings' trademarks; starving Avid Holdings of its own money to defend itself; and converting Avid Holdings' and Mr. Carfield's files, confidential information, and trade secrets, all with aid and abettance by Zhao and Dentons.

100.    Kwon has also attempted to obtain federal registrations for trademarks for Avid Holdings' owned and licensed intellectual property, including the "Advanced Vapor Devices" trademark, that Next Level was granted a limited license to use.

101.     For example, in December 2020, without any permission by or notice to the Carfields, Kwon attempted to obtain federal trademark registrations for Avid Holdings' intellectual property that Next Level had been granted only a limited license to use. He did not have any rights to them or even to use them except as explicated in the Distribution Agreement. He nevertheless misrepresented that he owns it, facially at odds with the cabined uses allowed to Next Level by agreement.

102.     On December 1, 2020, Kwon filed a Trademark/Service Mark Application with the United States Patent and Trademark Office for "Advanced Vapor Devices" claiming to be the "Owner of Mark."  Exhibit B.  This was a false representation, that was known to Kwon as being false.[8]  Kwon did not create the mark and did not have any rights to it, other than Next Level's limited license from Avid Holdings.

103.     In the fall of 2021, the Carfields' and Avid Holdings' confidential plans to file Chinese trademarks on several unique names were surpassed by a single person in Shenzhen, China, who somehow filed them all together, and faster.  This was because the business information was stolen by an insider, Zhao.  At the time, the Carfields and Avid Holdings did not know that Zhao had access to and was stealing their information by stealing Mr. Carfield's confidential passwords.  They learned this in late 2022 and 2023.  On information and belief, Zhao was sharing this information taken from his employer's proprietary networks with Kwon, Brosgart, Dentons, and likely Next Level, whom he was in a secret partnership with by then.

104.     Around the same time, the Carfields' and Avid Holdings' e-mails and other internal communications to and from Zhao showing he was their employee were deleted (only to

---

[8] This trademark was published for opposition on November 8, 2022.  On November 28, 2022, Mrs. Carfield filed an Opposition to the registration.  That dispute was addressed in a proceeding before the Trademark Trial and Appeal Board, Serial Number: 90352412.  By order of the Trademark Trial and Appeal Board, that proceeding has been stayed pending the outcome of the civil proceedings and arbitration involving Mrs. Carfield and Kwon.

be resurrected, partially, from other accounts and logs recently).  Again, the Carfields learned this fact in late 2022 and 2023.

105.    The falsity of Zhao's supposed ownership and control of the Carfields' enterprise, their laptops, their files, their accounts, and their trademarks is shown by Zhao's own negotiation of a transaction in September 2021, with Dentons centrally involved, that set aside a large fund for litigation against a common enemy.

106.    In that "joint defense" agreement, that enemy was identified as *AVD Holdings, Ltd.*  But that was the same entity that Avid Holdings and the Carfields were employing, with Zhao, to do their work.  Dentons (through Dentons Durham) even sent letters in September and October 2021 threatening the Carfields and their enterprise, making the threat against *AVD Holdings, Ltd.*  According to Zhao's story, contrived with Kwon, Next Level, Brosgart, and Dentons, he owned AVD Holdings, and also the Carfields' whole enterprise.  But this ruse was so flimsy that they could not keep it straight, such that the threats intended at the Carfields targeted the local Hong Kong payment processing company.  This was supposedly Zhao's corporate vehicle, by which he claimed to own the $11 million receivable, through which he falsely claimed that the Carfields worked for him, and through which he told the lawyers that the Carfields sought to hire not to represent them and his actual employer, Avid Holdings.  This ruse was so fanciful that its authors confused themselves and threatened the supposed top-level company, AVD Holdings, unraveling the thread.

107.    Kwon, Brosgart, and Zhao, with the active participation of Dentons, devised the claims that Zhao owned and controlled the whole Carfield enterprise, including AVD Holdings, Ltd.; that the Carfields were disallowed to hire counsel and that such counsel must turn over all privileged files to Zhao; the disappearance of files and communications from the Carfields' own networks by unauthorized access; and the lies about control and ownership, including as to the

AVD and Advanced Vapor Devices trademarks.

108.    Dentons represents each of Zhao, Brosgart, Kwon, and Next Level through some combination of Dentons Durham, Dentons US, and Dentons China.  Dentons claims that it innocently coordinated the wholesale taking of the Carfields' password-protected network files from its Los Angeles office in late September 2022.

109.    The groundwork for all of this, including the acquisition of the factories by Zhao, the Carfields' own agent, and the run-up of the maximum debt possible with Avid Holdings by Next Level, was underway in early September 2021.  Public records illustrate that Zhao had acquired the economic interests in factories by June 2021.

110.    But none of this secret partnership or usurpation plan was known to the Carfields until Defendants' conduct was revealed in the Delaware litigation, first glimpsed in December 2022.

*Defendants Seek to Obtain Perpetual Rights to the Brand and Business Enterprise*

111.    On October 5, 2021, Next Level initiated an arbitration against Avid Holdings to collect monies that it had, in fact, unlawfully withheld from Avid Holdings.  It purported to buy the receivable (that Zhao was charged with collecting from Next Level, in order to pay the factories) from the factories that it had distressed with nonpayment.

112.    In effect, Next Level, Kwon, Brosgart, Zhao, and Dentons orchestrated an imposter situation where they claimed to own the receivable that Next Level owed to Avid Holdings, by a purchase of an $11 million receivable for $7 million.  They then claimed to have incurred a fake loss (having to pay the factory, albeit at a radically-reduced level) in order to placate the factory (that Zhao by then had acquired).  This was a fabrication of damages and charged to Avid Holdings in an arbitration they rigged – one from which Avid Holdings still does not even have the pleadings, due to further misconduct.

113.    While bleeding Avid Holdings dry, they used Next Level's fundamental breach as a pattern to undermine the Distribution Agreement and then contrive a claim that Avid Holdings had "refused" to provide it with additional millions of dollars of unpaid, free goods.

114.    That attack by Next Level was preplanned as part of the intentional harm to Avid Holdings, after the refusal to be taken over by a distress acquisition.

115.    On October 4, 2021, Shenzhen Smoore Technology Limited ("Smoore"), a true third party, initiated a complaint against the Carfields and Avid Holdings in the United States International Trade Commission alleging that Avid Holdings and the Carfields had designed, manufactured, or marketed "vape" products, including through "AVD" as referenced in the Distribution Agreement, infringing certain of Smoore's patents.

116.    Next Level struck the very next day by initiating its arbitration against Avid Holdings, on October 5, 2021.  Initially the arbitration was initiated against the wrong party, AVD Holdings instead of Avid Holdings.  In other words, Dentons, Kwon, Next Level, Brosgart, and Zhao were all contriving to claim that Zhao owned the Carfields' Hong Kong payment vehicle (and all of the Carfields' international operation) at the same time they were suing that payment company.  Their story was so convoluted and untrue that they could not even keep it straight.

117.    Avid Holdings and the Carfields were hobbled by Next Level's intentional nonpayment and withholding of nearly $11 million (some of which was due to the Chinese factory and some of which was due to Avid Holdings itself).  This prevented Avid Holdings from defending itself against these serial, coordinated attacks (somehow coincided with Smoore's independent hostile action, later explained by the surveillance of internal documents, including email).

118.    Kwon and Dentons also coordinated Zhao to contact Avid Holdings' counsel and

tell him that *Zhao* was the true owner of AVD Holdings, Ltd. (the Carfields' Chinese payment processor, which Zhao ran as an agent) <u>and</u> AlderEgo Group, Ltd. (an alias of the Carfields' worldwide operating company), which was by then renamed Avid Holdings. This was false and was done to deter representation, so that Avid Holdings could not represent itself in the arbitration.

119.    On September 2, 2021, Jeffrey Jones of Dentons Durham, counsel for Next Level, sent correspondence to Mr. Carfield, addressing him as the "Chairman" of AVD Holdings, Ltd.

120.    This letter conflates AVD Holdings with Avid Holdings. It is inconsistent with the supposed claim that another Dentons client, Zhao, later opportunistically made that <u>he</u> owned AVD Holdings, Ltd., and that that instrumentality was the top-level entity that controlled the overall Carfield and Avid Holdings enterprise, and was ordering lawyers not to defend Avid Holdings. On information and belief, he and others were surveilling Avid Holdings' and the Carfields' emails at the time, including with their lawyers.

121.    On October 11, 2021, an e-mail from "frankzpont@gmail.com" purporting to be "Frank Zhao," was sent to Preston Ricardo, counsel for Avid Holdings. That e-mail asserts that Zhao is the "100% owner of AVD Holdings, Ltd. f/k/a AlderEgo Group Ltd. (AVD)." This e-mail repeats the same conflation of entities (listing both the local Chinese banking entity and the holding company) as Mr. Jones' letter, and repeats the precise syntactic formation of "f/k/a" in the same exact font.

122.    Next Level's counsel was involved in ghostwriting the e-mail for Zhao. Dentons has since confirmed that this email, which contains a material falsehood and was used to mislead third parties and deter representation, was written by Next Level's lawyers.

123.    The result was that Attorney Ricardo was caused to decline to represent Avid Holdings in the arbitration. The Carfields undertook extensive efforts to try to find replacement

counsel, but no counsel would represent Avid Holdings while another party (and Dentons) claimed that the Carfields did not even own their business.  Next Level's deliberate and tactical refusal to pay Avid Holdings any of the money that it was owed also helped to disrupt any timely defense against the attack, which also included coopting the Carfields' own agent, Zhao.  It was also assisted by Zhao continuing to have access to the Carfields' mail, and the Carfields did not receive notice of almost every single pleading.

124.    By Zhao lying and claiming he owned <u>both</u> lines of the Carfields' enterprise, and Dentons doing the same, both the "AVD Holdings" and the "Avid Holdings" lines, Avid Holdings was disabled and not represented at the arbitration.

125.    Next Level, Brosgart, and Kwon, and possibly others, also engaged in a number of deceptions in regard to the conduct of the American Arbitration Association arbitration that was commenced in October 2021 and concluded by default in April 2022, styled as ICDR Case No. 01-001-8078.

126.    Next Level failed to deliver numerous arbitration filings properly.  On information and belief, Zhao intercepted various pleadings from Avid Holdings' offices such that they were never received by anyone actually operating on behalf of Avid Holdings (although Zhao remains an agent, albeit a wayward one).

127.    The initiating arbitration documents were never served properly, and almost all of the materials that were required to be served were either never delivered or sent to locations where Zhao continued to have access and through which the Carfields and Avid Holdings did not receive them.

128.    Next Level, Brosgart, Kwon, and Dentons have refused to provide to Avid Holdings or the Carfields what they submitted to the ICDR and the ICDR claims that it does not have copies.

COMPLAINT

*Kwon and Dentons Coordinate with Zhao to Take and Invade Avid Holdings' and Mr. Carfield's Laptop and Private Electronic Networks*

129.    Next Level has since initiated a multi-jurisdictional litigation assault to further its scheme to usurp control and ownership of Avid Holdings and take its assets, as well as to deprive the Carfields of their livelihoods.  The arbitration award that Next Level obtained (and has confirmed in a separate proceeding in the Western District of Washington, presently on appeal) is only one component of this plan.  That arbitration award has been confirmed in a judgment purporting to award Next Level $892,020.25 plus 12% interest, although Next Level has sought to amend the judgment to include an additional $2,339,084.06, which the court did not allow.

130.    On August 9, 2022, Next Level initiated proceedings in the Delaware Court of Chancery titled *Next Level Ventures, LLC v. AVID USA Technologies LLC, et al*., Case No. 2022-0699-MTZ (the "Delaware Action"), using its arbitration award to further its plan to strip Avid Holdings and Mr. Carfield and Mrs. Carfield of their livelihoods and business enterprise.

131.    Unknown to the Carfields or Avid Holdings until late 2022, during the time from at least summer of 2021 through late September 2022, Zhao was improperly using unauthorized access to the private files and electronic networks of the Carfields and Avid Holdings, stealing information and files, deleting information and files, and sharing and misusing confidential information.  On information and belief, Zhao was sharing this stolen information with Dentons, Kwon, Brosgart, and Next Level.

132.    In the Delaware Action, Next Level purported to subpoena Zhao, on September 19, 2022, at the former Loews Santa Monica Beach Hotel in Santa Monica, California, now known as the Regent Santa Monica Beach Hotel.  *See Next Level Ventures, LLC v. AVID USA Technologies LLC, et al*., Del. Ch., Case No. 2022-0699-MTZ, Document # 42.  Upon information and belief, Dentons US undertook to domesticate the Delaware subpoena to be served on Zhao in California.

133.    Although Zhao resides in China, according to Next Level and Dentons, Zhao just happened to be in California on a specific day, Next Level and Dentons happened to know exactly where he would be and when, and Dentons served him with a subpoena *duces tecum*, without having provided any advance notice to the Carfields as parties in the Delaware Action.

134.    Zhao then immediately produced to Next Level *the complete contents* of Mr. Carfield's password-protected laptop.  This wholesale taking by Dentons staff was of nearly two years of e-mail communications, including hundreds of privileged e-mails between Mr. Carfield and counsel.  The coordinated activity, on information and belief with Kwon, Brosgart, and Zhao present at Dentons' Los Angeles office, required accessing password-protected e-mail accounts, Google accounts, and other online management and communications platforms, yielding access to vast quantities of confidential information belonging to Avid Holdings and the Carfields.

135.    Zhao, Kwon, and Dentons spent several days in Los Angeles and New York accessing Mr. Carfield's password-protected, paid-service private network cloud storage files.

136.    They rifled through Mr. Carfield's tens of thousands of personal and business e-mails, accessing privileged attorney-client communications and marital communications, and arranging for a pretend third-party subpoena production.  Zhao had password information because he was the Carfields' trusted employee and may have been able to observe keystrokes or guess passwords based on things like marital anniversary dates.

137.    Dentons coordinated this through its representation of all parties through Dentons Durham, Dentons US, and Dentons China.  These parties had accessed the private materials beforehand and curated a supposedly spontaneous production by the "unrelated" party Zhao. Zhao and others, including Kwon, had violated these confidential networks previously, and were already in a secret partnership with an agreement to spend $1 million to use lawsuits to harm the Carfields.

-30-

138.    In late September 2022, Kwon, Zhao, and Dentons intentionally deleted digital footprints reflecting their access, to conceal their misconduct.

139.    Kwon has refused to turn over logs of his cell phone access, but there are strong indicia of Kwon's unauthorized network access and taking of files and data from Mr. Carfield's password-protected cloud data in late September 2022 two blocks from Dentons' Rockefeller Plaza office in Manhattan, New York.  Kwon was in Midtown Manhattan at the same time.  There are also indisputable logs of access to the Carfields' private network from Dentons' Los Angeles office in September 2022.

140.    Logs of Mr. Carfield's Google Drive account reflect that on September 19, 2022, a device sync was recorded from an IP address assigned to the Dentons law firm.  Logs from Mr. Carfield's Google account also reflect that on September 21, 2022, an unauthorized user used the Google Vault tool to export data from Mr. Carfield's Google Drive and Gmail accounts.  Google Vault is an e-discovery tool.

141.    The use of an e-discovery tool suggests that Dentons was involved in that second data export, as it had been on September 19, 2022.

142.    In total, the proceeds of this network intrusion included about 35,000 documents from Mr. Carfield's personal e-mail account and account used for Avid Holdings' business, dating from approximately October 15, 2019, through September 21, 2022, including hundreds of privileged e-mail communications which Zhao was not copied on and had no reason to have.  This also included internal corporate communications including password-protected business plans and operations.

143.    Although Next Level has claimed that Zhao is an unaffiliated third party, in briefing in the Delaware Action over ownership of the laptop, it has purported to produce bank records from Zhao's personal bank account, suggesting that the claim of no relationship or

cooperation is untrue. Next Level has since admitted that Zhao in fact has been their partner since September 2021. Dentons has since confirmed that it has and does represent Zhao, Next Level, Brosgart, and Kwon, and also did so in the parties' dealings since at least September 2021.

144. Those misappropriated documents included the entire e-mail contents of Mr. Carfield's e-mail account (jonathan@avd.com) from a Google password-protected cloud resource purchased by Mr. Carfield. They also included a Monday.com account, used for business management and communication by Avid Holdings and other of Mr. Carfield's and Mrs. Carfield's businesses. They also included marital and attorney-client privileged communications.

145. On information and belief, Brosgart and a lawyer from Utah named Scott Gordon participated in the planning and execution of this misappropriation of network access and the taking and misuse of competitive and private information.

146. Essentially, Kwon, Brosgart, Zhao, and Dentons, along with Next Level, engaged in a conversion of highly-confidential, private property, which included information belonging to the Carfields and Avid Holdings, under the auspices of a subpoena. These documents were reviewed and used by prior "joint representation" activities that misappropriated the confidential and competitive data well before the performative subpoena.

147. Next Level has used the documents and information that were misappropriated through the putative subpoena to mislead the court in the Delaware Action, which the Carfields are addressing separately in the pending arbitration.

148. Defendants' common undertaking stems from Kwon's personal efforts to change his and Next Level's role as a licensee distributor of Avid Holdings' products.

149. Kwon, Brosgart, Zhao, Dentons, and Next Level succeeded in greatly damaging Avid Holdings' business. By purporting to claim that Next Level, as an enterprise, is itself AVD (or Advanced Vapor Devices), a right Next Level does not have, Next Level has taken enormous

goodwill, created and retained enormous profit, and hindered its competition.  Then, it suddenly re-branded in an effort to convert that goodwill and value to its new brand, ACTIVE.

150.    The Distribution Agreement only allowed Next Level to buy and then resell certain enumerated products branded with the AVD and like trademarks, including a valuable and well-known graphical mark.  It did not allow Next Level to acquire "AVD," become AVD, or achieve what it wanted to do by a merger, for free.  Its misappropriation of those rights, and its subsequent success, reflects a massive breach, conversion, and actionable usurpation.

## CAUSES OF ACTION

### COUNT I – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP OR BUSINESS EXPECTANCY
### (Avid Holdings v. Kwon, Zhao, and Dentons)

151.    Avid Holdings, Mr. Carfield, and Mrs. Carfield restate and reallege the allegations contained in the paragraphs above as if fully set forth herein.

152.    Avid Holdings had a valid contractual relationship or business expectancy with its factory, including Vaplax (now called Naixin).

153.    Specifically, Avid Holdings had an agreement with Vaplax that Vaplax would manufacture Avid Holdings' vape products, including the Goods under the Distribution Agreement.

154.    The Carfields had a valid business relationship and expectancy in the lawful enterprise that they founded and developed.

155.    Kwon and Brosgart had knowledge of Avid Holdings' contractual relationship or business expectancy with its factory.

156.    Kwon and Brosgart interfered by starving Avid Holdings of necessary revenue.

157.    Kwon, Brosgart, and Zhao usurped Avid Holdings' factory relationships and

entered into a joint venture with the factory.

158.    Zhao agreed to this conspiracy and actively participated in it.

159.    Zhao's participation included making local arrangements with the factory to facilitate connecting Kwon and Brosgart with the factory directly.

160.    Kwon, Brosgart, Dentons, and Zhao also interfered with Avid Holdings' relationship with counsel, who refused to represent Avid Holdings after Zhao falsely claimed to own the business enterprise and that Mr. Carfield had been terminated from that enterprise, neither of which was true.

161.    The factories that Avid Holdings worked with have ended their business dealings with Avid Holdings.  This was initially believed only to be due to the non-payment caused by Next Level.  It was not learned until sometime after September 2022, through discovery in the Delaware Action, that Kwon and Brosgart had participated in arranging a joint venture with the factory and that there had been a plan to supplant Avid Holdings and the Carfields in those relationships.

162.    Separately, more recently, Kwon and Brosgart have undertaken efforts affirmatively intended to part Avid Holdings from its new manufacturing partner with which it has contractual dealings.  These include the making of false statements and defamation, separately actionable, but also actionable as interference.  Kwon and Brosgart have known about Avid Holdings' relationships and have targeted their efforts on their new manufacturer specifically to cause harm and disruption to Avid Holdings' contractual and economic relationships.

163.    Avid Holdings has built an extensive manufacturing agreement with Henan Yuding Technology Company ("Yuding"), of Henan, China, which is an affiliate of Shenzhen YUTO Packaging Technology Co., Ltd. ("YUTO"), of Guangdong, China.

164.    YUTO is a multibillion-dollar, publicly-traded enterprise manufacturer of high-quality goods.  Next Level has sought to induce YUTO to cease dealing with Avid Holdings in order to interfere with Avid Holdings' relationship with Yuding.

165.    Kwon has misrepresented to YUTO numerous harmful statements intended to undermine Avid Holdings' contractual relationship with Yuding and economic relationship with YUTO.  These include false statements that (i) Avid Holdings has been determined to owe Next Level $5 million; (ii) that Mr. Carfield was only a translator for Next Level, whom Kwon sent to manage the supply chain as an agent of Next Level, and he is incapable of conducting any business himself; (iii) that Next Level owns the famous brand "AVD" and "Advanced Vapor Devices," so any business with those successful brands would need to include Next Level, and exclude Avid Holdings; and (iv) that Avid Holdings is defunct and failing.

166.    The Carfields have continued to operate in the vape industry.  They have developed and begun marketing new products that are not Goods, as defined in the Distribution Agreement.

167.    Kwon and Brosgart, aided and abetted by Dentons, have contacted customers of Mr. Carfield and Mrs. Carfield that had purchased vaping products that are not trademarked with "AVD" or "Advanced Vapor Devices" and falsely claimed that such products may not be sold or purchased.

168.    Kwon and Brosgart have claimed that <u>no</u> vaping products may be sold by any affiliate of Avid Holdings, including Mr. Carfield and Mrs. Carfield, except through Next Level.  The claims to this effect have been in exceedance of any rights under the Distribution Agreement, and are false and misleading.  The products that Kwon and Brosgart have targeted are not branded with any trademark that is licensed to Next Level by Avid Holdings, nor are they "Goods" as defined and treated within the Distribution Agreement.

169.    Kwon and Brosgart, aided and abetted by Dentons, have sent letters to customers

and business partners of the Carfields, claiming that Mr. Carfield is prohibited from engaging in any commerce whatsoever in regard to vape devices.  These communications have implied a threat of legal action and have overtly sought to dissuade the parties doing business, using false claims that the business is unlawful.

170.    Upon information and belief, Kwon (or Brosgart, acting at Kwon's direction) filed a claim with LinkedIn claiming that Mr. Carfield's profile contains inaccurate information with respect to an assertion that Mr. Carfield is, and has been, the "Founder" of "Advanced Vapor Devices (AVD)," from April 2018 to Present.

171.    It is undeniably true that Mr. Carfield "founded" Advanced Vapor Devices (AVD). Even if certain uses of "AVD" on "Goods" were exclusively licensed to Next Level, that does not negate that Mr. Carfield founded his own company Advanced Vapor Devices (AVD).  In fact, Next Level has acknowledged that it is using AVD as a licensee and not an owner.

172.    Kwon's complaint to LinkedIn was an effort to interfere with Mr. Carfield's LinkedIn account, business expectancies, and otherwise contribute to forcing him out of the industry altogether.

173.    Although the customers and business partners that Next Level, Kwon, or Brosgart contacted and attempted to intimidate from doing business with Avid Holdings or the Carfields have mostly not discontinued their business with the Carfields, this conduct illustrates the ongoing efforts that Kwon and Brosgart have engaged in attempt to interfere with valuable business relationships.

174.    In addition, Kwon, aided and abetted by Dentons, has sent letters to customers and other partners of Avid Holdings and the Carfields making claims that are false and misleading in an effort to harass and scare them from working with Avid Holdings and the Carfields.  This has included initiating an action in the California Superior Court against one customer that the

Carfields work with.  *See Next Level Ventures, LLC v. 1848 Shovel Company LLC*, Case No. 34-2022-00329519-CU-BT-GDS (the "FiftyShot Action").  Although Next Level filed this action, upon information and belief, it was done for Kwon's personal benefit.  The FiftyShot Action was not prosecuted, and Next Level did not even serve 1848 Shovel Company LLC d/b/a FiftyShot before the complaint was ultimately dismissed.  That litigation was used solely to interfere with customer relationships and goodwill, and cost significant effort and funds to address.

175.    As a result of the foregoing acts, Avid Holdings, Mr. Carfield, and Mrs. Carfield have suffered damages in an amount to be established at trial.

## COUNT II – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP OR BUSINESS EXPECTANCY
### (Avid Holdings and the Carfields v. Kwon and Dentons)

176.    Avid Holdings, Mr. Carfield, and Mrs. Carfield restate and reallege the allegations contained in the paragraphs above as if fully set forth herein.

177.    Avid Holdings and the Carfields also had a valid business relationship and expectancy with Zhao and his affiliated entity AVD Holdings.  This included employment and agency responsibilities by Zhao.

178.    Kwon and Brosgart also had knowledge of Avid Holdings' separate contractual relationship or business expectancy with Zhao and AVD Holdings, as its payment processor.

179.    Kwon and Brosgart had knowledge of this enterprise and of Avid Holdings' and the Carfields' business relationship with Zhao.

180.    Kwon and Brosgart usurped Avid Holdings' relationships with Zhao and AVD Holdings.

181.    To the extent any of their actions were done in the name of Next Level, those acts were done for Kwon's and Brosgart's personal benefit.

182.    Zhao and AVD Holdings have ended their business dealings with Avid Holdings,

Mr. Carfield, and Mrs. Carfield.

183.    Further, Zhao was an agent and fiduciary of Avid Holdings and its associated enterprise.  Kwon and Brosgart coopted and diverted Zhao and induced him to enter into a series of subversive and improper acts to serve a competitive and adverse enterprise and to subvert and harm Avid Holdings.  This included inducing Zhao to misappropriate Mr. Carfield's and Avid Holdings' laptop, data, and confidential and competitive information.

184.    Dentons was actively involved in perpetrating the interference with Avid Holdings' and the Carfields' relationship with Zhao and AVD Holdings.  This is evidenced by the indicia that a Dentons attorney ghost-wrote correspondence for Zhao to send to Avid Holdings' counsel, falsely claiming to own Avid Holdings and AVD Holdings and instructing the attorney to stand down on the basis that Mr. Carfield had no authority with either entity and that Zhao owned both.

185.    Kwon, Brosgart's, and Dentons' participation in this effort was not known until it was revealed in discovery in the Delaware action in late 2022, primarily through Zhao's sudden production of Avid Holdings' and the Carfields' confidential e-mails and other business information in response to a putative subpoena.

186.    As a result of the foregoing acts, Avid Holdings, Mr. Carfield, and Mrs. Carfield have suffered damages in an amount to be established at trial.

**COUNT III – UNFAIR COMPETITION, TRADEMARK INFRINGEMENT, AND FALSE ASSOCIATION UNDER THE LANHAM ACT**
**(Avid Holdings and Mrs. Carfield v. Kwon)**

187.    Avid Holdings, Mr. Carfield, and Mrs. Carfield restate and reallege the allegations contained in the paragraphs above as if fully set forth herein.

188.    Section 43(a) of the Lanham Act provides in pertinent part: "Any person, who, on or in connection with any goods or services, or any container of goods, uses in commerce any

-38-

word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A).

189.   Mrs. Carfield is the designer and owner of the following special character mark, which has had a registration since April 16, 2019.



190.   She is also the owner of several other trademarks.

191.   She had given Avid Holdings permission to use these and other trademarks.

192.   On December 1, 2020, Kwon personally and individually filed a Trademark/Service Mark Application with the United States Patent and Trademark Office for "Advanced Vapor Devices" claiming to be the "Owner of Mark." This was a false representation, that was known to Kwon as being false. Kwon has asserted that he did this for the benefit of Next Level, which purports to call itself AVD, but he also did so on his own account. Upon information and belief, the application was filed on his own behalf, individually, and not on behalf of Next Level. That mark was ultimately approved and published on November 8, 2022.

193.   Mrs. Carfield learned of this and filed an opposition to the registration of that mark with the United States Patent and Trademark Office Trademark Trial and Appeal Board. That proceeding is currently suspended, pending the outcome of the various proceedings between Next Level and Avid Holdings or the Carfields.

COMPLAINT

194.    Kwon, acting individually and as an agent of Next Level, has also purported to file applications for several other marks, including those that are confusingly similar to or derivative of Mrs. Carfield's mark, depicted above.  These include variations such as the following, reflecting at least two additional variations of the chevron "V" in Mrs. Carfield's mark:



195.    Upon information and belief, Kwon has filed these marks under a certain class for "batteries for electronic cigarettes" in an attempt to obtain a "back door" registration that he can use offensively against the Carfields and Mrs. Carfield's marks.

196.    Kwon's application for the chevron-style, three-letter mark included a representation that Kwon was "the owner of the trademark/service mark" and that "no other persons . . . have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive . . . ."  In fact, these marks were licensed, and all of Next Level's uses are under subordinate license terms.

197.    On March 4, 2024, Kwon's application for the chevron-style three-letter mark was finally refused due to a likelihood of confusion with Mrs. Carfield's AVD trademark.  Kwon did not take action to contest the final refusal.

198.    Kwon's actions constitute unfair competition, trademark infringement, or false

association, in violation of 15 U.S.C. § 1125(a)(1)(A).

199.   Kwon's actions also constitute unfair competition, trademark infringement, or false association, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

200.   Kwon, aided and abetted by Dentons, has contacted customers of Mr. Carfield and Mrs. Carfield that had purchased vaping products that are not trademarked with "AVD" or "Advanced Vapor Devices" and claimed that such products may not be sold or purchased.  Kwon has claimed that <u>no</u> vaping products may be sold by any affiliate of Avid Holdings, including Mr. Carfield and Mrs. Carfield, except through Next Level.  Their claims to this effect have been in exceedance of any of Next Level's rights under the Distribution Agreement.  The products that Kwon has targeted are not branded with any trademark that is licensed to Next Level by Avid Holdings, nor are they "Goods" as defined and treated within the Distribution Agreement.

201.   According to the "Advanced Vapor Devices" LinkedIn profile, maintained by Next Level, Kwon, and Brosgart, customer confusion, deception, or mistake is already taking place by its current claims to exclusive ownership, and market confusion.[9]  This LinkedIn profile has stated that "Advanced Vapor Devices (AVD) is a vape hardware manufacturer that specializes in building reliable cartridges, disposables, and batteries specifically designed for cannabis oils," and links to Next Level's website, shows Next Level's address, and makes claims that it is a Seattle, Washington manufacturer – where Next Level operates.  This tells consumers that Next Level is in fact AVD, not as a licensed seller of "Goods," but as a corporate entity and brand.

202.   The conscious and intentional destabilization and undermining of the customer relations of Avid Holdings and Mr. Carfield and Mrs. Carfield is shown by material misstatements that Kwon has made to customers up and through September of 2022.  Such

---

[9] https://www.linkedin.com/company/avd710/.

evidence, albeit in a putatively privileged lawyer's letter, shows the intention to compete unfairly and harm Mr. Carfield and Mrs. Carfield and Avid Holdings; to subvert the Distribution Agreement; to create marketplace confusion; and to aid Next Level by false statements. In such letters to actual customers for products that are not "Goods" within the Distribution Agreement, but which Next Level wishes to disrupt sales of, Dentons has falsely stated that Mr. Carfield is prohibited from engaging in any commerce in regard to vape devices.

203.    Separately, Kwon (and potentially Brosgart, too) has affirmatively represented to YUTO that Next Level owns the "AVD" and "Advanced Vapor Devices" trademarks. This false statement, along with misleading statements about Avid Holding and its affiliates, including Mr. Carfield, has overtly been intended to cause confusion. Even if Next Level has a limited-scope license to use those marks, it does not *own* them.

204.    Kwon's conduct (as well as Brosgart's), individually and on behalf of Next Level, reflect that their efforts to claim to *be* AVD, have been to cause mayhem to Avid Holdings and Mrs. Carfield. Next Level has now re-branded to ACTIVE™ which diverts all of the trademark's goodwill to a new brand, which creates improper gain and causes improper loss. Next Level continues to proclaim that "AVD is now ACTIVE™," continuing the false claim to ownership of AVD and the market confusion that it causes.

205.    The claims that Next Level was AVD or that "AVD is now ACTIVE™," create a forced association that is misleading, especially since Next Level has re-branded to ACTIVE and never *was* AVD.

206.    Kwon's acts and conduct (as well as Brosgart's) constitute unfair competition, trademark infringement, or false association, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). This is so even insofar as they acted as agents of Next Level and not on their own behalf, although their actions were also done for their own account.

207.    Avid Holdings, Mr. Carfield, and Mrs. Carfield have been damaged by the acts of Kwon and Brosgart in an amount to be determined at the trial, including, without limitation, appropriate royalties for misuse, punitive damages, treble damages, and attorney fees and costs.

208.    Avid Holdings, Mr. Carfield, and Mrs. Carfield are entitled to an injunction to stop these violations of the Lanham Act as to the conduct of Kwon and Brosgart participating in such misconduct or otherwise vicariously engaging in same.

### COUNT IV – FALSE OR FRAUDULENT REGISTRATION 15 U.S.C. § 1120
### (Mrs. Carfield v. Kwon)

209.    Mrs. Carfield restates and reallege the allegations contained in the paragraphs above as if fully set forth herein.

210.    Mrs. Carfield is the designer and owner of the "AVD" chevron word mark set forth above, which has had a trademark registration since April 16, 2019.

211.    She is also the owner of the unregistered "Advanced Vapor Devices" word mark, which she granted permission to Avid Holdings to use (and which Avid Holdings subsequently licensed to Next Level).

212.    On December 1, 2020, Kwon personally and individually filed a Trademark/Service Mark Application with the United States Patent and Trademark Office for "Advanced Vapor Devices" claiming to be the "Owner of Mark." This was a false representation, that was known to Kwon as being false.

213.    Kwon has asserted that he did this for the benefit of Next Level, which has purported to call itself AVD, but he also did so on his own account. Upon information and belief, the application was filed on his own behalf, individually, and not on behalf of Next Level. That mark was ultimately approved and published on November 8, 2022, unbeknownst to Mrs. Carfield at the time.

214.   Kwon filed and obtained approval for this mark on false pretenses.

215.   Mrs. Carfield promptly upon learning of the issuance filed an opposition to the registration of that mark with the United States Patent and Trademark Office Trademark Trial and Appeal Board.  That proceeding is currently suspended, pending the outcome of the various proceedings between Next Level and Avid Holdings or the Carfields.

216.   Mrs. Carfield has been damaged by the acts of Kwon in an amount to be determined at the trial, including, without limitation, appropriate royalties for misuse, punitive damages, treble damages, and attorney fees and costs.

### COUNT V – COMPUTER FRAUD AND ABUSE ACT
### (Avid Holdings and Mr. Carfield v. Kwon, Zhao, and Dentons)

217.   Avid Holdings and Mr. Carfield restate and reallege the allegations contained in the paragraphs above as if fully set forth herein.

218.   The Computer Fraud and Abuse Act ("CFAA"), in 18 U.S.C. § 1030(a)(2)(C) ascribes liability to one who "intentionally accesses a computer *without authorization or exceeds authorized access*, and thereby obtains . . . information from any protected computer."  18 U.S.C. § 1030(a)(2)(C) (emphasis added).

219.   A person acts "without authorization" when they do not have permission to access the computer.  18 U.S.C. § 1030(e)(6) (defining "exceeds authorized access" as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled so to obtain or alter").

220.   Kwon, Dentons, and Zhao (and on information and belief, others), have violated the CFAA by intentionally accessing (through Zhao), without authorization, a computer involved in interstate commerce or communication, or by exceeding authorized access to such computer, and by obtaining from such computer information involving an interstate communication.

221.    Kwon, Dentons, and Zhao are liable as direct, joint tortfeasors and also vicariously due to their own acts and omissions in conspiring, encouraging, aiding, abetting, ordering, and participating in efforts to do so.

222.    Kwon and Dentons accessed Mr. Carfield's laptop, which contained information belonging to Mr. Carfield and Avid Holdings, through Zhao, in Los Angeles, and may have done so from New York and perhaps other places prior to late September 2022.

223.    No authorization or permission was given for Kwon, Dentons, or Zhao to access the laptop.

224.    Kwon, Dentons, and Zhao knowingly obtained Mr. Carfield's and Avid Holdings' valuable files and documents through access to his laptop and separate password-protected cloud networks, which contained files belonging to Avid Holdings.

225.    Kwon's, Dentons', and Zhao's conduct caused a loss to Avid Holdings and Mr. Carfield in excess of $5,000 during a one-year period, in an amount to be determined at the trial.

226.    The acts that are alleged as to Dentons have involved each of Dentons Durham, Dentons US, and Dentons China.

227.    Avid Holdings and Mr. Carfield have suffered damage and loss by reason of these violations and is entitled to damages, injunctive relief, and other equitable relief as provided by 18 U.S.C. § 1030(g).

## COUNT VI – VIOLATION OF THE CALIFORNIA COMPREHENSIVE COMPUTER DATA ACCESS AND FRAUD ACT
### (Avid Holdings and Mr. Carfield v. Kwon, Zhao, and Dentons)

228.    Avid Holdings and Mr. Carfield restate and reallege the allegations contained in the paragraphs above as if fully set forth herein.

229.    Kwon, Dentons, and Zhao (and on information and belief, others), have violated California Penal Code § 502(c)(2) by knowingly accessing, through assistance or collaboration

-45-

with Zhao in California, taking, copying, or making use, including in the Delaware Action, of data from a computer, computer system, and computer network belonging to Avid Holdings and Mr. Carfield.

230.    Kwon, Dentons, and Zhao have violated California Penal Code § 502(c)(6) by knowingly and without permission providing or assisting in providing a means of accessing a computer, computer system, and computer network belonging to Avid Holdings and Mr. Carfield, to Next Level.

231.    Kwon, Dentons, and Zhao have violated California Penal Code § 502(c)(7) by knowingly and without permission accessing or causing to be accessed a computer, computer system, or computer network.

232.    Avid Holdings and Mr. Carfield have been injured by these violations of the California Comprehensive Computer Data Access and Fraud Act, in an amount to be determined at the trial and are entitled to treble or punitive damages and attorneys' fees pursuant to California Penal Code § 502(e).

233.    The unauthorized access occurred in California and is governed by California law.

234.    Because Kwon, Dentons, and Zhao willfully violated California Penal Code § 502, and there is and will be clear and convincing evidence that they acted with malice and oppression and committed "fraud" as defined by Section 3294 of the Civil Code, Avid Holdings is entitled to punitive and exemplary damages under California Penal Code § 502(e)(4).

235.    The acts that are alleged as to Dentons have involved each of Dentons Durham, Dentons US, and Dentons China.

236.    Kwon, Dentons, and Zhao are liable as direct, joint tortfeasors and also vicariously due to their own acts and omissions in conspiring, encouraging, aiding, abetting, ordering, and participating in efforts to do so.

## COUNT VII – TRESPASS TO CHATTELS
### (Avid Holdings and Mr. Carfield v. Kwon, Zhao, and Dentons)

237.    Avid Holdings and Mr. Carfield restate and reallege the allegations contained in the paragraphs above as if fully set forth herein.

238.    Avid Holdings and Mr. Carfield maintain passcode-protected areas on a laptop computer belonging to Mr. Carfield that provides access to other electronic accounts and networks such as the Monday.com business management and communications platform, an e-mail account, and a Google Workspace associated with Mr. Carfield's e-mail address.

239.    Kwon, Dentons, and Zhao (and on information and belief, others), without permission from Avid Holdings or Mr. Carfield or exceeding the scope of any such permission, willfully and maliciously entered upon Avid Holdings' and Mr. Carfield's passcode-protected accounts or areas of Mr. Carfield's laptop.

240.    Zhao traveled from China to Los Angeles to bring the laptop to a local Dentons office where these accounts were accessed and exported by Zhao or Dentons.

241.    Kwon, Dentons, and Zhao are liable as direct, joint tortfeasors and also vicariously due to their own acts and omissions in conspiring, encouraging, aiding, abetting, ordering, and participating in efforts to do so.

242.    The acts that are alleged as to Dentons have involved each of Dentons Durham, Dentons US, and Dentons China.

243.    Kwon's, Dentons', and Zhao's actions have caused Avid Holdings and Mr. Carfield damage in an amount to be determined at the trial.

## COUNT VIII – VIOLATION OF TITLE II OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT
### (Avid Holdings and Mr. Carfield v. Kwon, Zhao, and Dentons)

244.    Avid Holdings and Mr. Carfield restates and realleges the allegations contained in

-47-

the paragraphs above as if fully set forth herein.

245.    Kwon, Dentons, and Zhao (and on information and belief, others), have violated Title II of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2701, *et seq*., by: (a) intentionally accessing without authorization, or by intentionally exceeding an authorization to access, the passcode-protected areas of Mr. Carfield's laptop which included sites such as the Monday.com business management and communications platform, Mr. Carfield's e-mail account used for Avid Holdings' business, and a Google Workspace cloud associated with Mr. Carfield's e-mail address; (b) obtaining access to electronic communications while such communications were in electronic storage in those websites; (c) upon information and belief, disclosing such communications to third parties not authorized to receive them; and (d) conspiring, encouraging, aiding, abetting, ordering, and participating in efforts to do so.

246.    Avid Holdings and Mr. Carfield have been damaged by Kwon's, Dentons', and Zhao's violations of Title II of the Electronic Communications Privacy Act, in an amount to be determined at the trial, and are entitled to damages, injunctive relief, and attorneys' fees and costs pursuant to 18 U.S.C. § 2707.

247.    The acts that are alleged as to Dentons have involved each of Dentons Durham, Dentons US, and Dentons China.

248.    Kwon, Dentons, and Zhao are liable as direct, joint tortfeasors and also vicariously due to their own acts and omissions in conspiring, encouraging, aiding, abetting, ordering, and participating in efforts to do so.

### COUNT IX – MISAPPROPRIATION/CONVERSION
### (Avid Holdings v. Kwon and Zhao)

249.    Avid Holdings restates and realleges the allegations contained in the paragraphs above as if fully set forth herein.

250.    Kwon and Zhao have committed at least two related instances of misappropriation and conversion.

251.    First, when Kwon caused Zhao to abandon his duties as described herein, and breach his agency and fiduciary duty, Kwon coordinated with him to "sell" certain accounts receivable that he had been directed as an agent of Avid Holdings and Mr. Carfield and Mrs. Carfield to collect and preserve funds from, acting through the banking instrumentality of his employers, AVD Holdings, Ltd.

252.    Those accounts receivable were for products supplied by Avid Holdings to Next Level, in an amount of approximately $11,000,000.  Any powers to collect and possess such funds by Zhao and AVD Holdings, Ltd., were solely as agent and employee as to Zhao, and as an instrumentality of Zhao as to AVD Holdings, Ltd.  The attempt to "sell" such accounts was without good title, *ultra vires*, in breach of duty, improper, and ineffective.

253.    To the degree that any such conveyance of such accounts receivable may have been effective, it is accountable against Zhao and also Kwon as a ruse to take accounts that were never Zhao's.

254.    As to the misappropriated accounts receivable, Kwon and Zhao are liable as direct, joint tortfeasors and also vicariously due to their own acts and omissions in conspiring, encouraging, aiding, abetting, ordering, and participating in efforts to do so.

255.    Second, when Kwon caused Zhao to abandon his duties as described herein, and breach his fiduciary duty, Zhao purported to seize one or more bank accounts and funds therein that were the property of Avid Holdings.

256.    That bank account in of AVD Holdings, Ltd., included funds that had been wired by a new, prospective business counterparty to fund the Avid Holdings operation in September and October 2021.  It also included a cash balance on hand from ordinary operations.  Plaintiffs

estimate, on information and belief, that the account held approximately $150,000.00.

257.    As to the misappropriated bank account(s), the direct involvement of Kwon and Zhao is inferable but not as overtly documented as with the accounts receivable.    On information and belief, Kwon and Zhao are liable as direct, joint tortfeasors and also vicariously due to their own acts and omissions in conspiring, encouraging, aiding, abetting, ordering, and participating in efforts to do so.

258.    As a result of Kwon's and Zhao's conduct, Avid Holdings has been harmed in an amount to be determined at the trial.

### COUNT X – DEFAMATION
**(Avid Holdings and Mr. Carfield v. Kwon)**

259.    Avid Holdings and Mr. Carfield restate and reallege the allegations contained in the paragraphs above as if fully set forth herein.

260.    Kwon, acting as an individual and also as an agent of Next Level, has made false statements to YUTO, including that: (i) Avid Holdings has been determined to owe Next Level $5 million; (ii) that Mr. Carfield was only a translator for Next Level, whom Kwon sent to manage the supply chain as an agent of Next Level, and he is incapable of conducting any business himself; (iii) that Next Level owns the famous brand "AVD" and "Advanced Vapor Devices," so any business with those successful brands would need to include Next Level, and exclude Avid Holdings; and (iv) that Avid Holdings is defunct and failing.

261.    Mr. Carfield has also recently learned from contacts of him that people acting on behalf of Next Level have been publicizing to his contacts and business associates that it has been awarded damages on the order of $5 million against the Carfields, personally.  That is untrue.

262.    Kwon's statements are demonstrably false.  The claims are demonstrably false without reference to technical matters.

263.    Kwon made or published these statements with knowledge of their falsity or, at the very least, with reckless disregard for their falsity.

264.    Kwon made and published these statements without privilege or justification.

265.    To the extent that Kwon may argue that the statements are opinions, Kwon failed to disclose any factual support for his statements.

266.    These statements have damaged Avid Holdings and Mr. Carfield by causing reputational harm, and interfering with Avid Holdings' business interests, including interfering with Avid Holdings' and Mr. Carfield's relationship with Yuding and undermining or reducing goodwill and confidence.

267.    Avid Holdings and Mr. Carfield have incurred damages as a result of the publication of these false statements in an amount to be determined at the trial.

## COUNT XI – CIVIL CONSPIRACY
### (Avid Holdings and the Carfields v. Kwon, Zhao, and Dentons)

268.    Avid Holdings, Mr. Carfield, and Mrs. Carfield restate and reallege the allegations contained in the paragraphs above as if fully set forth herein.

269.    Kwon, Brosgart, Zhao, Dentons, and upon information and belief others, agreed among themselves to use unlawful means to accomplish various unlawful purposes as set forth above, including misappropriation and conversion of Avid Holdings', Mr. Carfield's, and Mrs. Carfield's assets (including accounts receivable, business relationships, and goodwill); misappropriation of Avid Holdings' and Mrs. Carfield's trademarks; starving Avid Holdings of its own money to defend itself; computer trespass and taking; and misappropriation and conversion of Avid Holdings' and Mr. Carfield's files, money, confidential information, and trade secrets.

270.    In furtherance of said agreement, the aforementioned individuals engaged in

fraudulent representations, omissions and concealment of facts, acts of cover-up, and statements calculated to obtain Avid Holdings', Mr. Carfield's, and Mrs. Carfield's property, assets, and confidential information and trade secrets for the benefit of Next Level and as set forth in detail in the foregoing paragraphs, which are hereby incorporated herein as though set forth in full.

271.    The actions taken were executed in a coordinated fashion such that they likely could not have been accomplished without knowledge and agreement of the other participants. For example, this included coordinating travel for Zhao to be in Los Angeles on a particular day and ready to render Mr. Carfield's personal laptop to Dentons and provide the passwords, and, upon information and belief, for Kwon and Zhao to meet in New York with Dentons, again with Mr. Carfield's laptop and passwords.

272.    Each of Kwon, Zhao, and Dentons took action in furtherance of the conspiracy.

273.    The same group has also conspired to cause Zhao to breach his fiduciary duty to Avid Holdings and the Carfields.

274.    Zhao was and still is an agent and employee of Avid Holdings, and also of Mr. Carfield and Mrs. Carfield, as part of an overall enterprise, in which Zhao and his company were subordinate and bound to duties of loyalty, care, and honesty based on his agency and employment.

275.    Kwon and Zhao agreed and undertook a strategy to induce, aid, and abet Zhao to refuse his duties as an agent and employee of Avid Holdings, and Mr. Carfield and Mrs. Carfield, as part of an overall enterprise.

276.    Kwon induced Zhao to refuse his duties, to subvert his principal's and employer's interest, and to assist an adverse party, Next Level and affiliates, to strip Avid Holdings and the related enterprise of value, assets, trade secrets, confidential information, money, accounts, and goodwill.

277.     Kwon and Zhao thereby jointly conspired, encouraged, aided, abetted, ordered, and participated in plans to supplant Avid Holdings' role in the Distribution Agreement with a new enterprise.

278.     That replacement breached the duties that Zhao owed to Avid Holdings and its associated enterprise, and still owes today as a wayward and unreleased fiduciary.

279.     These actions transplanted the economic value of Zhao's duties to Avid Holdings and Mr. Carfield and Mrs. Carfield into a new joint venture that Zhao and his affiliates formed with Next Level, that Next Level enjoyed the value of by way of shared ownership of the joint venture and even equity ownership in Zhao's affiliated companies, including factories.  That ill-gotten gain continues to accrue and belongs to Plaintiffs.

280.     The acts that are alleged as to Dentons have involved each of Dentons Durham, Dentons US, and Dentons China.

281.     Kwon's Zhao's, and Dentons' actions have caused Avid Holdings, Mr. Carfield, and Mrs. Carfield damage in an amount to be determined at trial.  Kwon, Dentons, and Zhao are liable as direct, joint tortfeasors and also vicariously due to their own acts and omissions in conspiring, encouraging, aiding, abetting, ordering, and participating in efforts to do so.

## COUNT XII – INVASION OF PRIVACY – INTRUSION INTO PRIVATE MATTERS
### (Mr. Carfield v. Kwon, Zhao, and Dentons)

282.     Mr. Carfield restates and realleges the allegations contained in the paragraphs above as if fully set forth herein.

283.     The right of privacy is protected by the California Constitution, Article I, Section I.  The right of privacy is also recognized with respect to spousal communications and other electronic communications under the common law and the California Invasion of Privacy Act statute, Cal. Penal Code §§ 630-638.

284.     Kwon, Dentons, and Zhao (and on information and belief, others), who were acting personally but also on behalf of Next Level, have violated the Carfields' right to privacy by intentionally accessing without authorization the passcode-protected areas of Mr. Carfield's laptop which included sites such as the Monday.com business management and communications platform, Mr. Carfield's e-mail account used for Avid Holdings' business, and a Google Workspace cloud associated with Mr. Carfield's e-mail address.

285.     Kwon, Dentons, and Zhao (and on information and belief, others), who were acting personally but also on behalf of Next Level, have also violated the Carfields' right to privacy by intentionally accessing without authorization the private communications, including highly-confidential spousal communications between Mr. Carfield and Mrs. Carfield.

286.     The Carfields had an expectation of privacy in their marital communications, including spousal communications, that were intentionally intruded on by Kwon, Dentons, and Zhao (and on information and belief, others).

287.     The intrusion by Kwon, Dentons, and Zhao (and on information and belief, others) into the private conversations between Mrs. Carfield and Mr. Carfield, and the Carfields and third parties, is highly offensive to a reasonable person.  The conduct is particularly offensive because the motive was to obtain information to use against the Carfields, and such information was password-protected.

288.     The Carfields have been damaged by Kwon's, Zhao's, and Dentons' violations of their right to privacy and intrusion into their personal matters in an amount to be determined at trial.

289.     This invasion of the Carfields' privacy has harmed them, and has had an adverse effect on their ability to defend themselves in the various current litigations.

290.     The acts that are alleged as to Dentons have involved each of Dentons Durham,

COMPLAINT

Dentons US, and Dentons China.

291.     Kwon, Dentons, and Zhao are liable as direct, joint tortfeasors and also vicariously due to their own acts and omissions in conspiring, encouraging, aiding, abetting, ordering, and participating in efforts to do so.

## PRAYER FOR RELIEF

WHEREFORE, Avid Holdings, Mr. Carfield, and Mrs. Carfield pray that this Court grant them the following relief:

1.     That judgment is entered for Avid Holdings, Mr. Carfield, and Mrs. Carfield on each of their claims for damages and costs, including consequential, general, compensatory, punitive, compensatory punitive, exemplary, and special damages, including all other available damages as determined at trial.

2.     That Avid Holdings, Mr. Carfield, and Mrs. Carfield be awarded attorneys' fees and costs, including without limitation pursuant to 18 U.S.C. § 2707 and California Penal Code § 502(e).

3.     That Avid Holdings, Mr. Carfield, and Mrs. Carfield be awarded pre- and post-judgment interest.

4.     That Avid Holdings, Mr. Carfield, and Mrs. Carfield be awarded injunctive relief, including as to violations of the Lanham Act.

5.     That Defendants provide an accounting of all files, data, and secrets misappropriated and that a reliable and complete purging of all access to the same be performed, with computer forensic verification and oversight.

6.     That the Court award such other and further relief as the Court considers just and proper.

COMPLAINT

1    DATED this 24th day of September, 2024.

2                                                          Respectfully Submitted,

3                                                          **AVID HOLDINGS, LTD., JONATHAN**
4                                                          **CARFIELD, and HANNA CARFIELD**

5                                                          By their attorneys,

6

7                                                          By: /s/ Colin R. Hagan
                                                           Colin R. Hagan
8                                                          Shlansky Law Group, LLP
                                                           3790 El Camino Real, #112
9                                                          Palo Alto, CA 94306
                                                           Phone: (650) 238-5433
10                                                         Fax:    (866) 257-9530
                                                           E-mail: Colin.Hagan@slglawfirm.com
11

12                                                         David J. Shlansky*
                                                           Frances F. Workman*
13                                                         Shlansky Law Group, LLP
                                                           1 Winnisimmet Street
14                                                         Chelsea, MA 02150
                                                           Phone: (617) 497-7200
15                                                         Fax: (866) 257-9530
16                                                         Email: David.Shlansky@slglawfirm.com
                                                                      Frances.Workman@slglawfirm.com
17

18                                                         * *pro hac vice* application forthcoming

19                                                         *Attorneys for Plaintiffs*

20

21

22

23

24

25

26

27

28

COMPLAINT